**In re Marion Jean Pordos WILLIAMS, Debtor.**

**Bankruptcy No. 95–42602–399.**

United States Bankruptcy Court,
E.D. Missouri,
Eastern Division.

Jan. 2, 1996.

**366**

John V. LaBarge, Standing Chapter 13 Trustee, St. Louis, MO.

David Sadat, Thomas J. Noonan & Associates, St. Louis, MO.

T.J. Mullin, Clayton, MO, for Debtor.

Peter Lumaghi, Asst. U.S. Trustee, St. Louis, MO.

## AMENDED MEMORANDUM OPINION AND ORDER

BARRY S. SCHERMER, Bankruptcy Judge.

## INTRODUCTION

The issue raised in this motion for relief from the automatic stay is the reasonableness of a Chapter 13 trustee's policy of holding proceeds of checks received from employers of debtors for ten (10) days before disbursement to creditors.

## JURISDICTION

This Court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157, 1334 and Local Rule 29 of the United States District for the Eastern District of Missouri. This is a "core proceeding" which the Court may hear and enter appropriate judgements pursuant to 28 U.S.C. § 157(b)(2)(G).

## STATEMENT OF FACTS

Marion Williams (the "Debtor") voluntarily filed a Chapter 13 petition on May 9, 1995. On that same day, an Order to Deduct from Wages or Other Income was entered by this Court. This Order was sent to the Debtor's employer, McDonnell Douglas Corporation.

Debtor's Chapter 13 plan called for payments to the Trustee of $675.00 per month, and it was confirmed on July 19, 1995. A first payment of $168.75 was received from McDonnell Douglas on June 8, 1995. Subsequent payments were received through employer withholding on the following dates and in the corresponding amounts:

| | |
|---|---|
| July 6, 1995 | $675.00 |
| August 10, 1995 | $675.00 |
| September 7, 1995 | $675.00 |
| October 5, 1995 | $675.00 |
| November 9, 1995 | $675.00 |
| December 7, 1995 | $675.00 |

Ford Motor Credit Company ("Ford") holds a security interest in the Debtor's automobile. On November 22, 1995, Ford filed a Motion to Lift Stay (the "Motion") because, presumably, its collateral was inadequately protected under the plan. *See* 11 U.S.C. § 362(d). A hearing was held on December 13, 1995, and the Motion was overruled.

Despite prevailing on the Motion, Debtor's attorney raised an issue as to the reasonableness of the standing Chapter 13 trustee's policy of holding proceeds of checks received by employers for ten (10) days. He stated to the Court:

The problem associated with what I've already gone over where people all dislike me saying it about the ... *holding of the checks and the once a month distribution.* [Marion Williams] worked for McDonnell–Douglas and the trustee is paying out. The plan was confirmed. It called for arrearages to be cured within thirty months. The trustee has put him on the computer to pay him in equal thirty month payments. Now, as a consequence, Ford has gotten some money but the Trustee is going back and recapturing the arrearage. (emphasis added).

Mr. Mullin then informed the Court that the Debtor was "on wage assignment" and

that the Debtor was less than one payment behind. After the Court's ruling denying Ford's Motion, Mr. Mullin offered a copy of the printout from the trustee's office for the Court to examine "at [its] leisure."

Following Mr. Mullin's suggestion, this Court on that same day sent a letter to John V. LaBarge, the standing Chapter 13 Trustee in this region (the "Trustee"). In that letter, the Court explained to the Trustee its ruling in this particular case and the underlying cause of similar relief motions, namely: the holding of proceeds of employer withholding checks for ten (10) days before disbursement to ensure the check has been honored. The Court requested the Trustee's response to Mr. Mullin's objection. The Trustee responded by letter on December 19, 1995 with supporting documentation.[1]

The Court today accepts Mr. Mullin's invitation as an opportunity to clarify and to annunciate its position on a seemingly fundamental issue which has, curiously, caused great controversy in some circles.

## DISCUSSION

### I. The Williams Case

#### A. The Trustee's Policies

Two policies of the Trustee are challenged here, and each must be explained. First, as previously noted, the Trustee holds funds received through employer withholding orders for ten (10) days before distributing the proceeds to creditors according to the terms of confirmed Chapter 13 plans (hereafter referred to as the "ten day policy"). Not surprisingly, the purpose of this ten day policy is to ensure the funds deposited are actually collected. Next, the Trustee's payment policy is to disburse funds to creditors once monthly on the 25th day of each month.

The combined effect of the Trustee's ten day policy and the monthly distribution is that all checks received on or prior to the 15th of any month are distributed in that month. Conversely, checks received from the 16th to the 24th of any month result in disbursements on the 25th day of the following month[2].

#### B. Application of the Trustee's Policies

In the instant case, all funds received from McDonnell Douglas were disbursed in the month they were received because, as shown by the receipt schedule above, all payments were received prior to the 15th day of the month. Thus, contrary to counsel's suggestion, no money was held over to the following month because of the Trustee's policies.

The deficiency in the present case was caused by other factors, as the Trustee explains in his letter. First, the July, 1995 disbursement to Century Finance was held because Debtor's counsel incorrectly scheduled the claim as unsecured, and the claim was filed as a secured claim. Next, the Debtor grossly underestimated the amount of the home loan arrearage claim held by the Department of Housing and Urban Development ("HUD"). The claim filed by HUD was 73% higher than the claim filed by the Debtor. Curing this arrearage alone required monthly payments of $403.04.

Lastly and most importantly, the Debtor has *never been current* on his payments to the Trustee. The first payment received was for $168.75 when $675.00 was due. Although this inadequate payment may not be the fault of the Debtor, he failed to cure the deficiency of $506.25. As the trustee points out, had the Debtor made the full payment in June, 1995, Ford would have been paid, and quite possibly, the Motion would never have been filed. Notwithstanding the fact that there was absolutely no basis for Debtor's counsel's objection, this Court will speak to the Trustee's policy which counsel has gone to great lengths to criticize.

---

1. Mr. Mullin and Mr. David Sadat, Attorney for Ford Motor Credit Company, have been mailed copies of all correspondence and addendums.

2. It should be noted that the consistent policy of this Court has been to deny motions for relief from the automatic stay filed by secured credi

tors when the Trustee holds the money to the following month. The reason for this is that, although the creditor will not receive the money, the money is held by the Trustee and that fact ensures adequate protection.

## II. Policy of the Trustee

The Trustee adopted and abides by the ten day policy for the simple reason that not all checks are honored when they are deposited. By holding disbursement for ten days, the Trustee allows the check to "clear" and makes sure the funds are available for distribution.

For some reason, this simple and prudent policy has caused great confusion[3]. Some have argued that the Trustee should make disbursements *immediately* upon depositing checks into his bank account. In effect, this belief is that the Trustee should absorb the costs of all funds which are disbursed and for which certain checks are subsequently dishonored[4]. Presumably, the Trustee is to absorb such imprudent disbursements either in operating expenses or personally. The Court believes these arguments are ludicrous and border on the frivolous.

■ The Court endorses the Trustee's ten day policy and holds that it is both a prudent and reasonable policy. Additionally, the once monthly distribution policy of the Trustee is appropriate as no other Chapter 13 trustee in the three state United State Trustee Region 13 distributes funds more than once per month, and this Court knows of no such practice anywhere in the country.

The Trustee concedes in his letter that there may be cases in which secured creditors may not be adequately protected because of the ten day policy. But the Trustee states—and this Court absolutely concurs—that the number of wage withholding cases where a Debtor is current on plan payments and where payments are received between the 16th day and 25th day of the month are few relative to the total number of Chapter 13 cases in this district. In such case, the Trustee notes that there are two solutions which the Debtor may choose: paying ahead one monthly payment or rescinding the wage withholding and paying by money order or cashiers check. Although the former choice

may not be possible for some debtors and the latter is discouraged by the trustee for reliability problems, alternatives do exist and any slight inconvenience must be borne by the debtors themselves.

In support of his policy, Trustee points to Federal Regulation CC of the Expedited Funds Availability Act, 12 U.S.C. §§ 4001–4010, which states: "all other check deposits will be available on the seventh business day for local checks or the eleventh business day for non-local checks after the day of [the] deposit." Furthermore, the Trustee represents that his banker—a banker the Court knows specializes in work for Chapter 13 trustees—has stated to him that a five day holding policy would be insufficient. The accountant for the Trustee has characterized the ten day policy as "prudent behavior for a fiduciary."

The argument has also been made that the Trustee should hold checks only from "nonreputable" employers and disburse cash after receipt of checks from large, "reputable" employers. The Court also believes this approach to be impractical. The first and most obvious problem with this proposed solution is that any determination made by the Trustee would be completely arbitrary. No single factor—number of employees, corporate net worth, longevity, etc.—ensures a single check will not be returned to the Trustee for insufficient funds.

Another problem with this proposed solution is that many companies considered to be large and "reputable" have recently undergone financial difficulties and Chapter 11 filings. For example, Trans World Airlines, a major employer in the St. Louis metropolitan area, is currently in Chapter 11 before this Court. Similarly, the Trustee represented that a check issued by Edison Brothers, a publicly held company with corporate offices in St. Louis, was recently returned to him. Even the Debtor's employer, McDonnell Douglas Corporation, has been rumored to be near bankruptcy on numerous occasions

---

3. The Court has discussed this issue and has observed debate over it among the bankruptcy bar at its quarterly Chapter 13 practitioners meetings.

4. The cost of this policy to the Trustee is hardly insignificant. As the Trustee's letter points out,

his office has had $4,498.00 in returned checks in the fourth quarter of 1995 alone. This averages to approximately $400.00 per week. Such amount would especially impact an office which is a closely monitored by the Office of the United States Trustee.

over the past few years [5]. This Court does not believe it is the duty of the Trustee and will not force the Trustee to make subjective, independent and updated evaluations of the financial health of every business from which he receives checks.

Lastly, any complaint about the rate at which this Trustee turns money over to creditors is incredible in view of national statistics. The Trustee submitted statistics from the Office of the United States Trustee which show that the national average for all Chapter 13 trustees to hold receipts is 1.33 months with a range of .21 months to 6 months. The Office of Mr. LaBarge holds money for .5 months, and the Office of the United States Trustee ranks this as within the top 20 of the approximately 175 Chapter 13 trustees in the country. This turnover rate is especially impressive when considering the volume of cases the Chapter 13 Trustee handles annually [6].

## CONCLUSION

For these reasons, the Court finds that Ford Motor Credit Company is adequately protected. It is

**ORDERED** that the Motion to Lift Stay filed by Ford Motor Credit Company is **OVERRULED.**

It is

**FURTHER ORDERED** that the objections to the Chapter 13 Trustee's dual policies of holding funds on checks received by employer withholding for ten days before disbursements to creditors and of once monthly disbursement are **OVERRULED.**

---

5. *See e.g.* Dave Fusaro, *McDonnell Douglas Battered by Financial Weather*, Metalworking News, June 18, 1990, 1990 WL 2691877 (First Boston analyst stated that McDonnell Douglas is "flying into bankruptcy"); Sandra Sugawara, *McDonnell Douglass to Cut jobs; Up to 17,000 Employees Will be Affected, 80 in Washington Area*, The Washington Post, July 17, 1990, at C1 (rumors of a bankruptcy filing sweep Wall Street"); Richard L. Stern and Thomas Bancroft, *McDonnell Douglas' Make-or-Break Year*, Forbes, Jan. 7, 1991 at 36 (Pentagon audit documents rate the company a "possible bankruptcy."); Steven Pearlstein, *Defense Contractors vs. Pentagon; general Dynamics, McDonnell Douglas File Suit Over A–12*, The Washington Post, June 8, 1991, at C1 (Navy officials state publicly that [McDonnell Douglas] could be forced into bankruptcy if required to return money to the government); John D. Morrocco, *Headline News McDonnell Douglas Sought $1 Billion Advance from U.S. to Ease Cash Crunch*, Aviation Week & Space Technology, July 29, 1991 at 23 (repayment would have "forced McDonnell to declare bankruptcy"); Ralph Vartabedian, *Bush Withholds Defense Memo from Congress* ..., Los Angeles Times, Aug. 31, 1991, at 1. ("McDonnell ... may have been threatened by bankruptcy without the [government] deferral"); Steven Pearlstein, *Pentagon Says It Would Aid McDonnell Douglass* ..., The Washington Post, Oct. 4, 1991, at F1 (Pentagon to offer help of cost overrun brings [McDonnell] to brink of bankruptcy); Stuart Auebach and Steven Pearlstein, *Aerospace Giant Goes to Taiwan for Edge; McDonnell Douglas May Sell Stake*, The Washington Post, at C1 (McDonnell on "the verge of bankruptcy" earlier in the year"); Laura D'Andrea Tyson, *McDonnell Douglas–Taiwan Deal Present U.S. With a Pandora's Box*, Los Angeles Times, Mar. 1, 1992 at 3 (McDonnell's commercial operations "teetering on the brink of bankruptcy."); *Clinton Says he Opposes British–USAir Deal/Democratic Hopeful Says Such Plans Could Hurt McDonnell Douglas*, Boeing, Star Tribune, Newspaper of the Twin Cities, Oct. 30, 1992, at 3D (Bill Clinton publicly states McDonnell Douglas is at the point of bankruptcy); Bruce Einhorn, *Taiwan Balks at McDonnell Price Aerospace* ..., Los Angeles Times, Apr. 30, 1992, at 1 ("some called on the government to take measures to ensure the success of Taiwan's part of the investment in the event of [McDonnell's] bankruptcy."); John Mintz and Brett Fromson, *Pentagon Payment to a Contractor a Mystery; Check, Later Returned, Bolstered McDonnell Douglas Balance Sheet*, The Washington Post, Dec 2, 1992, at C1 (Pentagon official reports that the government was prepared to advance funds early in 1991 to help McDonnell avert bankruptcy); David J. Lynch, *McDonnell Douglas Still Trying to get Cargo Jet Off the Ground*, The Orange County Register, Feb. 28, 1993, at K1 (Air Force contracting officer states that data indicates McDonnell had "severe financial problems" and was "on the verge of bankruptcy."); *SEC Investigating McDonnell Douglas Over C–17 'Losses'*, Wall Street Journal, Mar. 18, 1993 at C17; Thomas. E. Ricks, *McDonnell Douglas's Financial Health Is Challenged by Top Pentagon Auditor*, Wall Street Journal, Apr. 23, 1993, A4.

6. In 1994, 3,354 Chapter 13 cases were filed in the Eastern District of Missouri. In the first eleven (11) months of 1995, 3,271 cases have been filed. Although many cases are of short duration, cases from years prior to 1994 are still viable in the Trustee's office.